# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE L. MORENA aka<br>JOSE L. MORALES MIRANDA,<br><br>    Petitioner,<br><br>    v.<br><br>S.J. RYAN, WARDEN,<br><br>    Respondent.<br>_____/ | CV F   04-6502 AWI SMS HC<br><br>FINDINGS AND RECOMMENDATIONS REGARDING PETITIONER'S AMENDED PETITION FOR WRIT OF HABEAS CORPUS<br><br>[Docs. 12, 17] |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## BACKGROUND

On November 14, 2000, Petitioner was convicted by jury in the Kern County Superior Court of three counts of second degree murder, three counts of vehicular manslaughter with gross negligence, one count of doing an act forbidden by law while driving under the influence, with bodily injury resulting, and one count of doing an act forbidden by law while driving with a blood alcohol level of 0.08 or higher, with bodily injury resulting. (CT 399-402.) Petitioner was sentenced to forty-five years in state prison.

Petitioner filed a timely notice of appeal to the California Court of Appeal, Fifth Appellate District. The Court of Appeal affirmed Petitioner's conviction and sentence on December 12, 2002. (Lodged Doc. 4.)

Petitioner timely petitioned the California Supreme Court for review. (Lodged Doc. 5.) Review was denied on February 19, 2003. (Lodged Doc. 6.)

On April 14, 2004, Petitioner filed a petition for writ of habeas corpus with the Kern County Superior Court. (Lodged Doc. 7.) The petition was denied on May 5, 2004. (Lodged Doc. 8.)

On June 4, 2004, Petitioner filed a petition for writ of habeas corpus with the California Court of Appeal, Fifth Appellate District. (Lodged Doc. 9.) The petition was denied on June 10, 2004. (Lodged Doc. 10.)

On July 9, 2004, Petitioner filed an amended petition[1] for writ of habeas corpus with the California Supreme Court. (Lodged Doc. 11.) The petition was denied on September 15, 2004. (Lodged Doc. 12.)

Petitioner filed the instant petition for writ of habeas corpus on October 15, 2004, and an amended petition on April 12, 2005. (Court Docs. 1, 12.)

Respondent filed an answer to the amended petition on July 22, 2005. (Court Doc. 17.) Petitioner did not file a traverse.

## STATEMENT OF FACTS[2]

> On July 31, 2000 [Petitioner] Jose Luis Morales Moreno was driving his Ford Mercury Cougar at a high rate of speed, with a blood alcohol level of 1.138 or higher, and without a valid driver's license when he swerved while attempting to pass another car, hit the center divider, went airborne, and landed on top of an oncoming Ford Expedition Explorer. Three occupants of the Explorer (Myrtle Tilford, Chris Moore and Rachel Scott) were killed. Two of the three other occupants of the Explorer (Sara Rodriguez and 8-year-old Crystal Moore) and [Petitioner's] passenger (Jose Martinez) suffered significant and substantial injuries. [Petitioner] previously had been arrested at least twice (in 1995 and 1998) for driving under the influence of alcohol.

## DISCUSSION

---

[1] As Respondent submits, Petitioner filed a first petition for writ of habeas corpus with the California Supreme Court on November 20, 2003. On July 9, 2004, Petitioner filed a "supplement" to his first petition. As did Respondent, the Court refers to both filings as Petitioner's "amended petition" and treats them singly. (Lodged Doc. 11.)

[2] The Court finds the Court of Appeal correctly summarized the facts in its December 12, 2002, opinion. (Lodged Doc. 4.) Thus, the Court adopts the factual recitations set forth by the California Court of Appeal, Fifth Appellate District.

A.      Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  The challenged conviction arises out of the Kern County Superior Court, which is located within the jurisdiction of this Court.  28 U.S.C. § 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997; Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

B.      Standard of Review

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

The AEDPA altered the standard of review that a federal habeas court must apply with respect to a state prisoner's claim that was adjudicated on the merits in state court. Williams v. Taylor, 120 S.Ct. 1495, 1518-23 (2000).  Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade,123 S.Ct.1166 (2003) (disapproving of

3

the Ninth Circuit's approach in Van Tran v. Lindsey, 212 F.3d 1143 (9th Cir. 2000)); Williams v. Taylor, 120 S.Ct. 1495, 1523 (2000). "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Lockyer, at 1175 (citations omitted). "Rather, that application must be objectively unreasonable." Id. (citations omitted).

While habeas corpus relief is an important instrument to assure that individuals are constitutionally protected, Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392 (1983); Harris v. Nelson, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a criminal conviction is the primary method for a petitioner to challenge that conviction. Brecht v. Abrahamson, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993). In addition, the state court's factual determinations must be presumed correct, and the federal court must accept all factual findings made by the state court unless the petitioner can rebut "the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769 (1995); Thompson v. Keohane, 516 U.S. 99, 116 S.Ct. 457 (1995); Langford v. Day, 110 F.3d 1380, 1388 (9th Cir. 1997).

C.      Ineffective Assistance of Counsel

Petitioner contends that trial counsel was ineffective for advising him to plead no contest to two prior unrelated instances of driving under the influence by misleading him to believe that it would be in his best interest and would not be used against him in the trial proceedings.

The law governing ineffective assistance of counsel claims is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d). Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998.) In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the court must consider two factors. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994). First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687. The petitioner must show that counsel's representation fell below an objective standard of reasonableness, and must identify counsel's

4

alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential. A court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir.1994).

Second, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result ... would have been different," 466 U.S., at 694. Petitioner must show that counsel's errors were so egregious as to deprive defendant of a fair trial, one whose result is reliable. Strickland, 466 U.S. at 688. The court must evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's ineffectiveness. Id.; Quintero-Barraza, 78 F.3d at 1345; United States v. Palomba, 31 F.3d 1356, 1461 (9th Cir. 1994).

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. Strickland, 466 U.S. 668, 697, 104 S.Ct. 2052, 2074 (1984). Since the defendant must affirmatively prove prejudice, any deficiency that does not result in prejudice must necessarily fail. However, there are certain instances which are legally presumed to result in prejudice, e.g., where there has been an actual or constructive denial of the assistance of counsel or where the State has interfered with counsel's assistance. See Strickland, 466 U.S. at 692; United States v. Cronic, 466 U.S., at 659, and n. 25, 104 S.Ct., at 2046-2047, and n. 25 (1984).

Ineffective assistance of counsel claims are analyzed under the "unreasonable application" prong of Williams v. Taylor, 529 U.S. 362 (2000). Weighall v. Middle, 215 F.3d 1058, 1062 (2000).

As Respondent submits, Petitioner's claim that he pled no contest to the 1995 and 1998 drunk driving incidents, is based on a misapprehension of the trial proceedings. Petitioner was prosecuted under an "implied malice" theory of second-degree murder which required proof that Petitioner deliberately performed a dangerous act, "with knowledge of the danger to, and with

conscious disregard for, human life." People v. Dellinger, 49 Cal.3d 1212, 1222 (1989); Lodged Doc. 4, at 3.

As Respondent submits, there is nothing in the record to support Petitioner's contention that his trial counsel advised him to plead no contest to the 1995 and 1998 drunk driving incidents. In fact, defense counsel filed a motion in limine seeking to exclude evidence of the 1995 and 1998 arrests, and vigorously argued that the evidence should be excluded. (See RT 45-58, 64-104.) Further, as recognized by the Court of Appeal, at the time of Petitioner's trial he had never been convicted of the 1995 or 1998 drunk driving incidents - by plea or otherwise. Because this is so, the jury certainly could not have been presented with evidence that Petitioner had been convicted of those offenses. Rather, the State presented evidence that Petitioner was *arrested* in 1995 and 1998 for drunk driving. Simply stated, nothing in the record supports Petitioner's contention that he was ever advised by trial counsel to plead no contest to those offenses, or that, he ever did plead no contest to those offenses.[3]

D.   Instructional Errors

Petitioner contends that the trial court erred in the following respects: (1) admitting evidence of Petitioner's prior arrests for drunk driving because those arrests were only proven by a preponderance of the evidence, thereby "nullif[ying] the burden of proof required of the prosecution"; (2) the express malice instruction was erroneous; (3) his trial counsel was ineffective for failing to request that the court instruct the jury on gross negligence; and (4) the evidence of voluntary intoxication negated the requisite mental state for implied malice.

To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due

---

[3] As Respondent submits, "It may be that Petitioner has confused the issue of his prior arrests with his decision to plead no contest to one count of driving while the privilege was suspended or revoked for driving under the influence (Cal. Veh. Code § 14601.2(a)) and one count of failing to provide evidence of financial responsibility (Cal. Veh. Code § 16028(a)). (RT 109-112.) If so, Petitioner has not adequately presented that claim to this Court nor has he exhausted such a claim. In any event, as Respondent submits, "if his lawyer advised him to plead no contest to these charges, that advice represented a sound strategy of conceding guilt to offenses that are usually simple to prove while effectively keeping prejudicial evidence related to those charges away from the jury." (Answer, at 11.) Nor has Petitioner demonstrated prejudice in that but for counsel's error, there is a reasonable probability that he would not have pled guilty and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52, 58-59, 106 S.Ct. 366 (1985).

1  process. See id. at 72. Additionally, the instruction may not be judged in artificial isolation, but
2  must be considered in the context of the instructions as a whole and the trial record. Id. The
3  court must evaluate jury instructions in the context of the overall charge to the jury as a
4  component of the entire trial process. See United States v. Frady, 456 U.S. 152, 169 (1982)
5  (*citing* Henderson v, Kibbe,  431 U.S. 145, 154 (1977)). Furthermore, even if it is determined
6  that the instruction violated the petitioner's right to due process, a petitioner can only obtain
7  relief if the unconstitutional instruction had a substantial influence on the conviction and thereby
8  resulted in actual prejudice under Brecht v. Abrahamson , 507 U.S. 619, 637, 113 S.Ct. 1710
9  (1993) (whether the error had a substantial and injurious effect or influence in determining the
10 jury's verdict.). See Hanna v. Riveland, 87 F.3d 1034, 1039 (9th Cir. 1996). The burden of
11 demonstrating that an erroneous instruction was so prejudicial that it will support a collateral
12 attack on the constitutional validity of a state court's judgment is even greater than the showing
13 required to establish plain error on direct appeal." Id.

14     Under California law, murder is defined as the unlawful killing of a human being with
15 malice aforethought. (Ca. Pen. Code § 187.)[4] Malice may be either "express or implied." (§
16 188; see also People v. Watson, 30 Cal.3d 290, 295 (1981).) "Malice is implied when: [¶] 1. The
17 killing resulted from an intentional act, [¶] 2. The natural consequences of the act are dangerous
18 to human life, and [¶] 3. The act was deliberately performed with knowledge of the danger to,
19 and with conscious disregard for, human life." People v. Dellinger, 49 Cal.3d 1212, 1222
20 (1989).

21     In the instant case, the prosecutor introduced evidence of two separate prior drunk driving
22 instances involving Petitioner in 1995 and 1998, in an effort to establish that Petitioner had
23 knowledge that driving under the influence of alcohol was dangerous to human life, thereby
24 imputing implied malice. See People v. Garcia, 41 Cal.App.4th 1832, 1848-1851 (1995),
25 *disapproved on another ground in* People v. Sanchez, 24 Cal.4th 983, 991 (2001).

26     Bakersfield Police Officer Jeffrey Paglia testified that on April 4, 1998, at 3:30 a.m.,

27
28        [4] All further statutory references are to the California Penal Code unless otherwise indicated.

7

Petitioner was arrested for driving under the influence. (RT 302-303, 307.) Petitioner was observed going 15 miles per hour in a 45 mile per house speed zone. (RT 303.) Officer Paglia stopped the vehicle and smelled the odor of alcohol on his breath, his speech was slurry, his eyes were watery, and he was unsteady. (RT 304, 309.) Petitioner gave the false name of Jose Guadalupe Avalos.[5] (RT 307.) Petitioner was arrested and booked in the Kern County jail. (RT 307-308.) Petitioner performed poorly on the field sobriety tests. (RT 309-314.) Petitioner's breath alcohol level was .07. (RT 314.)

Deputy Sheriff Ronald Willey, testified that on September 25, 1995, at 3:20 a.m., Petitioner was under investigation for driving under the influence of alcohol. (RT 324-327.) Petitioner was observed making a wide turn from one street onto another. (RT 328-329.) The investigation was turned over to California Highway Patrol Officer Jeffrey Lawson. (RT 327.) Officer Lawson arrested Petitioner for driving under the influence. (RT 333-335.) Petitioner performed poorly on the field sobriety tests, and the odor of alcohol was detected on his breath.[6] (RT 338.) The results of the breath tests were 0.18 and 0.17.[7] (RT 343.)

The trial court gave CALJIC Nos. 2.50,[8] 2.50.1[9] and 2.50.2[10] to explain that the sole

---

[5] Due to the passage of time, officer Paglia was unable to identify Petitioner in court. (RT 307.)

[6] Officer Lawson identified Petitioner in court as the individual he arrested that night. (RT 339.)

[7] As noted by the Court of Appeal, "[t]he jury did not hear that [Petitioner] failed to appear for his arraignment following his 1995 arrest, and that because of his failure to appear the criminal proceedings against him resulting from the 1995 incident were still pending at the time of the trial in the present case. Apparently he was never prosecuted after the 1998 arrest." (Lodged Doc. 4, at 4.)

[8] As read to the jury, CALJIC No. 2.50 stated:
   Now evidence has been introduced for the purpose of showing that the defendant committed crimes other than that for which he is on trial. *This evidence, if believed, may not be considered by you to prove that the defendant is a person of bad character or that he has propensity to commit the crimes of driving while under the influence. This evidence may be considered by you only for the limited purpose of showing or of determining if it tends to show or determine the defendant's knowledge of the danger to human life.*
   Again, ladies and gentlemen, I am going to read that instruction because, if you recall, there was some evidence of events that happened in 1995 and 1998, and the purpose of those events are what this instruction has to do with. Evidence has been introduced for the purpose of showing that the defendant committed crimes other than that for which he is on trial. This evidence, if believed, may be considered - - *may not be considered by you to prove that the defendant is a person of bad character or that he has propensity to commit the crimes of driving while under the influence.* It may be considered by you only for the limited purpose of determining if it tends to show the defendant's knowledge of the danger to human life.

8

purpose of the prior instances of drunk driving were for proving knowledge on the part of Petitioner.

In rejecting Petitioner's claim on direct appeal, the Court of Appeal held, in part, as follows:[11]

> [Petitioner] argues that the above quoted CALJIC Nos. 2.50, 2.50.1 and 2.50.2 instructions "which authorized the jury to determine the accused's knowledge of the danger to human life, a necessary, elemental fact required to establish second-degree implied malice murder, from prior acts not proven by a preponderance of the evidence violated per se the Fourteenth Amendment Due Process Clause and the Sixth Amendment jury trial guarantee of proof beyond a reasonable doubt." We reject this argument for several reasons.
>
> .................................................................................................
>
> [¶] If [Petitioner] is contending that the CALJIC No. 2.50 series instructions given in this case told the jury that the jury could convict him on the basis of evidence showing something less than proof beyond a reasonable doubt of his guilt, he is simply mistaken. Nothing in those instructions so states. The jury was correctly instructed with CALJIC No. 2.90 that a conviction required proof of his guilty beyond a reasonable doubt. [Petitioner] cites *People v. Vichroy* (1999) 76 Cal.App.4th 92, *People v. Orellano* (2000) 79 Cal.App.4th 179, and *People v. Younger* (2000) 84 Cal.App.4th 1360, and says that he "relies on" these cases. But he does not explain how they help him or what applicability they could

---

(RT 517-518.) (Emphasis added)

[9] As read to the jury, CALJIC 2.50.1 stated:
  Now within the meaning of the preceding instruction, the prosecution has the burden of proving by a preponderance of the evidence that the defendant committed a crime or crimes other than those for which he is on trial. You must not consider the evidence for any purpose unless you find by preponderance of the evidence that the defendant committed the other crimes or crimes.

(RT 518-519.)

[10] As read to the jury, CALJIC 2.50.2 stated:
  The term preponderance of the evidence means evidence that has more convincing force than that opposed to it. If the evidence is so evenly balanced that you are not - – that you are unable to find that the evidence on either side of an issue preponderates, your finding on that issue must be against the party who has the burden of proving it. You should consider all of the evidence bearing upon every issue regardless of who produced it.

(RT 519.)

[11] Because the California Supreme Court's opinion is summary in nature, however, this Court "looks through" that decision and presumes it adopted the reasoning of the California Court of Appeal, the last state court to have issued a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n. 3, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) (establishing, on habeas review, "look through" presumption that higher court agrees with lower court's reasoning where former affirms latter without discussion); see also LaJoie v. Thompson, 217 F.3d 663, 669 n. 7 (9th Cir.2000) (holding federal courts look to last reasoned state court opinion in determining whether state court's rejection of petitioner's claims was contrary to or an unreasonable application of federal law under § 2254(d)(1)).

possibly have to the present case. These three cases involved instructions (former CALJIC No. 2.50.01 in *Vichroy* and *Orellano*, and former CALJIC No. 2.50.02 in Younger) which instructed the jury that the jurors could infer from evidence of prior crimes that the defendant had a disposition to commit the same or similar type of crime, and that "If you find that the defendant had this disposition, *you may, but are not required to, infer that [he] was likely to commit and did commit the crimes [or crimes] of which he is accused*." (*People v. Vichroy*, *supra*, 76 Cal.App.4th at p. 99; *People v. Orellano*, *supra*, 79 Cal.App.4th at p. 183; and *People v. Younger*, *supra*, 84 Cal.App.4th at p. 1380.)  Those three courts held that the instruction authorized the jury to convict a defendant of a currently charged crime solely on the basis of evidence of his propensity to commit such a crime, and that such an instruction therefore violated the due process requirement that a defendant's guilt of the currently charged crime be proven beyond a reasonable doubt.  In the present case, however, the CALJIC No. 2.50 instruction correctly told the jurors that the "other crimes" evidence "if believed, may not be considered by you to prove that the defendant is a person of bad character or that he has a propensity to commit the crimes of driving while under the influence." Indeed, the court repeated the CALJIC No. 2.50 instruction twice to emphasize the limited purpose for which the evidence was introduced.  The jury was not instructed that if the jurors found that [Petitioner] had a propensity to commit the crime of driving under the influence, they could use this evidence to infer that he committed murder, or even to infer that he was driving under the influence at the time of the July 31, 2000 incident.  In short, these three cases appear to have no applicability whatsoever to the present case.  The undisputed evidence that [Petitioner] was driving under the influence on the day of the crash included the testimony of California Highway Patrol Officer Ryan Duran, who stated that [Petitioner] had the smell of alcohol on his breath, had slow and mumbled speech, failed two field sobriety tests, and told Duran that he [Petitioner] had been drinking. [Petitioner's] blood alcohol level approximately one hour after the crash was measured at 0.14.

   If [Petitioner] is contending that the CALJIC No. 2.50 series of instructions should not have been given because there was no evidence that [Petitioner] drove under the influence in 1995 and 1998, this is meritless.  The evidence was the testimony of Officer Paglia and Deputy Willey, described above. We should perhaps add here that [Petitioner] never contested, either with evidence, argument, or both that he drove under the influence in 1995 and 1998, and/or that he was the person who was arrested for driving under the influence in 1995 and 1998 as described by the testimony of Officer Paglia and Deputy Willey. Furthermore, [Petitioner's] trial counsel told the court during a conference on instructions: "Your Honor, 2.50, the defense is not going to argue that the two priors are anything but true.  We are not contesting that, we are not making that argument.  We agree they are true."

..............................................................................................................................
   If [Petitioner] is contending that the instructions told the jury, in essence, "if you find by a preponderance of the evidence that [Petitioner] drove under the influence on two prior occasions, then you must conclude that he knew beyond a reasonable doubt, on July 31, 2000, that driving under the influence was dangerous to human life" (our paraphrasing of what [Petitioner] may or may not be arguing), the instructions simply do not say that.  The CALJIC No. 2.50 instruction told the jury that the other crimes evidence "may be considered by you only for the limited purpose of determining if it tends to show that the defendant's knowledge of the danger to human life."  This instruction left open the possibility that the jury could have concluded that [Petitioner] did drive under the influence in 1995 and 1998, and was arrested for those prior crimes, but still did not know

> that driving under the influence was dangerous to human life. The jury instead concluded that [Petitioner] knew, beyond a reasonable doubt, in July of 2000 that driving under the influence was dangerous to human life.
> If [Petitioner] is contending that the last sentence of CALJIC No. 2.50, as given, was erroneous because evidence of prior instances of driving under the influence cannot in fact tend to show a defendant's knowledge that driving under the influence is dangerous to human life, this argument too has been rejected. As Petitioner concedes, numerous cases have held that evidence of prior convictions for driving under the influence are relevant to prove the knowledge element of implied malice. *(See, e.g., People v. Talamantes* (1992) 11 Cal.App.4th 968; *People* v. David (1991) 230 Cal.App.3d 1109; and *People v Murray* (1990) 225 Cal.App.3d 734. . . . .

(Lodged Doc. 4, at 5-9.)

As stated by the Court of Appeal, the trial court's instructions pursuant to CALJIC Nos. 2.50, 2.50.1 and 2.50.2, properly conveyed the law as it applied to the jurors use of the prior instances of drunk driving to establish Petitioner's knowledge of the danger posed by driving drunk. As reasoned by the Court of Appeal, the 1995 and 1998 instances of drunk driving (proven by a preponderance of the evidence) could be used by the jury *only* for the *limited* purpose of showing that Petitioner had knowledge of the danger of drunk driving to human life. This left the jury to determine whether Petitioner knew *beyond a reasonable doubt* that driving under the influence was dangerous to human life. Further, as stated by the Court of Appeal, this case did not involve use of propensity evidence to infer disposition to commit the same or similar crimes for which he was charged. Rather, the evidence was limited for the sole purpose of establishing implied malice, i.e. whether Petitioner knew driving drunk was dangerous to human life.[12] The state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

With regard to Petitioner's remaining claims, as Respondent submits, these claims are unexhausted. Despite the failure to exhaust, the Court may deny the claims on the merits if it is

---

[12] Thus, the concerns outlined in the Ninth Circuit Court of Appeal's opinion in Gibson v. Ortiz, 387 F.3d 812 (9th Cir. 2004), are not present here. In Gibson v. Ortiz, the Ninth Circuit Court of Appeals ruled that the pre-1999 version of CALJIC 2.50.01, coupled with CALJIC 2.50.1, impermissibly lessened the standard of proof required to convict on the "sexual offenses" which were similar to the uncharged "sexual offenses." Specifically, the Court held the instructions allowed the jury to find that the defendant had committed the uncharged offenses by a preponderance of the evidence and then infer that he had committed the charged acts also by a preponderance of the evidence. Here, no such improper inference arose, because the prior instances of drunk driving were admitted *solely* for the purpose of proving motive, not to infer that he had the propensity to commit the same or similar type of crime.

11

"perfectly clear that the applicant does not raise even a colorable federal claim." Cassett v. Stewart, 406 F.3d 614, 623-24 (9th Cir. 2005) (adopting standard set forth in Granberry v. Greer, 481 U.S. 129, 135 (1987).

With respect to Petitioner's second claim that the express malice instruction was error, it is without merit. As the Court of Appeal noted, the People conceded to the jury that the instant case did not involve express malice. Lodged Doc. 4, Opinion, at 11. In fact, as recognized by the Court of Appeal, it was defense counsel that requested the express malice instruction be given in an effort to explain to the jury the difference between express and implied malice. Therefore, as the Court of Appeal held Petitioner invited the error. Lodged Doc. 4, Opinion, at 12. In any event, because the express malice instruction had no bearing on the case, and it was conceded and argued to the jury that the present case involved only implied malice, there is no reasonable likelihood that the jury applied the challenged instruction in a way that violates the Constitution, and Petitioner's claim is without merit.

Petitioner's third claim that trial counsel was ineffective for failing to request that the court instruct the jury on gross negligence also fails to raise a "colorable federal claim." Petitioner's claim is not supported by the record, as the jury was instructed as to gross negligence. As Respondent states, Petitioner was charged in Counts IV, V, and VI with gross vehicular manslaughter while intoxicated and the jury was accordingly instructed pursuant to those charges, including an instruction regarding gross negligence. (RT 519-522; CT 296.) Petitioner's claim to the contrary is simply unfounded.

Petitioner's fourth and last claim that evidence of his voluntary intoxication negated the requisite mental state for implied malice, is without merit. Petitioner is simply mistaken as to the availability of the defense of voluntary intoxication under California law. California Penal Code section 22 explicitly precludes evidence of voluntary intoxication to negate implied malice aforethought. People v. Martin, 78 Cal.App.4th 1107, 1114 (2000). Therefore, because Petitioner's voluntary intoxication was not admissible evidence to negate implied malice, Petitioner's claim simply fails to raise a "colorable federal claim."

E.   Unconstitutional Sentence

1   Petitioner contends that the trial court's imposition of three consecutive terms for a total
2   aggregate sentence of 45 years to life violated his federal constitutional rights. Petitioner
3   contends that the trial court erred by not ordering his terms to be served concurrently or stayed
4   two of the terms under California Penal Code section 654 "since all counts were committed from
5   the same set of operative facts."

6   Respondent argues that the instant claim is unexhausted, as Petitioner presented his claim
7   to the state courts as only a challenge under state law. Respondent is correct. On direct appeal to
8   the state appellate court, Petitioner argued that his sentence constituted an abuse of discretion
9   under state law. See Lodged Doc. 1, at 26-27. Petitioner did not further challenge his sentence -
10  under state or federal law - in any subsequent filings with the state courts, whether on petition for
11  review or on petition for writ of habeas corpus. Petitioner's claim is therefore unexhausted.
12  Gray v. Netherland, 518 U.S. 152, 162-163 (1996); see also Shumway v. Payne, 223 F.3d 982,
13  998 (9th Cir. 2000) (a claim is not "fairly presented" to the state court unless the petitioner
14  "specifically indicated to that court that those claims were based on federal law.").

15  In the alternative, Respondent argues that despite the failure to exhaust, the claim
16  nonetheless fails to state a "colorable" federal claim. To the extent Petitioner is attempting to
17  challenge his sentence under state law, it is not cognizable via § 2254, and Petitioner does not
18  present a colorable federal claim. Habeas corpus relief is not available to correct alleged errors
19  in the state court's application or interpretation of state law. Estelle v. McGuire, 502 U.S. 62,
20  67-68, 112 S.Ct. 475, 480 (1991); Middleton v. Cupp, 768 F.2d 1083, 1084-85 (9th Cir.1985).

21  However, with regard to Petitioner's claim that his sentence violates the Eighth
22  Amendment's prohibition against cruel and unusual punishment, the Court cannot say that "it is
23  "perfectly clear that the applicant does not raise even a colorable federal claim." Cassett v.
24  Stewart, 406 F.3d at 623-24.[13] The Court must dismiss, without prejudice, so Petitioner can
25  return to state court to exhaust the remainder of his claims before filing a new federal petition.
26  Rose v. Lundy, 455 U.S. at 520; Guizar v. Estelle, 843 F.2d at 372. As an alternative, Petitioner
27  may seek a stay from this Court and request that the petition be held in abeyance pending

28

---

[13] The Court, however, expresses no opinion whatsoever as to the merits of this claim.

13

exhaustion of this claim in state court.  See <u>Rhines v. Weber</u>, 125 S.Ct. 1528 (2005); <u>Anthony v. Cambra</u>, 236 F.3d 568, 574 (9th Cir. 2000).  Based on the foregoing, the instant claim will be dismissed, without prejudice, for failure to exhaust the state court remedies.

RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus be DENIED, as to all claims, except Petitioner's claim that his sentence is unconstitutional;

2. Petitioner's claim that his sentence is unconstitutional is DISMISSED, without prejudice, for failure to exhaust the state court remedies; and

3. The Clerk of Court be directed to enter judgment in favor of Respondent as to all claims, except the unconstitutional claim; thus, terminating this action.

This Findings and Recommendations is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   January 31, 2007**            /s/ Sandra M. Snyder
icido3                                   UNITED STATES MAGISTRATE JUDGE